IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GABRIEL SANDLIN,

Petitioner,

v. Case No. 2:24-cv-00250-DHU-LF

RONALD MARTINEZ,

Respondent.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on plaintiff Gabriel Sandlin's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, filed March 11, 2024. Doc. 1. The Court ordered an answer, Doc. 4, and respondent filed his answer on September 27, 2024, Doc. 8. United States District Judge David H. Urias referred this case to me "to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." Doc. 10. Having reviewed the parties' filings and the applicable law, I recommend that the Court deny Mr. Sandlin's petition for the reasons discussed below.

**BACKGROUND**

In 2019, Mr. Sandlin pled guilty to a drug trafficking offense in state court, for which District Judge Michael H. Stone sentenced him to nine years of incarceration. Doc. 1 at 16. Most of Mr. Sandlin's sentence was suspended; he was sentenced to serve just under eighteen months of physical confinement. *Id.*; Doc. 8-1 at 9. On April 9, 2020, he was released on probation. Doc. 8-1 at 15. He violated his conditions a few months later, and as a result, Judge Stone issued an order in October 2020 imposing the balance of his sentence, suspending that sentence, and placing Mr. Sandlin on probation for a period of five years. *Id.* at 11–24.

In March 2022, the State of New Mexico again filed a petition to revoke Mr. Sandlin's probation, this time based on domestic violence charges against Mr. Sandlin. *Id.* at 27. "While the charges were pending, the Court learned that [Amber Mondragon, the alleged victim and Mr. Sandlin's girlfriend] would soon be filing a notice of non-prosecution." *Id.* at 79–80. Judge Stone therefore found that Mr. Sandlin had not violated his conditions of probation. *Id.* at 35. But he advised Mr. Sandlin that he had "dodged a bullet today," and that "if you come back with another allegation like this, I might not be near as sympathetic as I am today." *Id.* at 80. Mr. Sandlin's probation officer instructed him upon his release from custody on March 25, 2022, "that he was to have no contact with Amber." *Id.* at 39.

A third petition to revoke probation came in May 2022. *Id.* at 36. The alleged violations were 1) failing "to obey a law or ordinance . . . and endanger[ing] the person of another"; 2) "associating with a person identified by his Probation and Parole Officer as being detrimental to his supervision"; 3) failing "to make every effort to obtain and hold a legitimate job and support his family"; and 4) violating the drug requirements of his parole. *Id.* at 36–37. The inciting event was a law enforcement call by Mr. Sandlin's father on May 19, 2022, stating that Mr. Sandlin had overdosed. *Id.* at 46. The police report indicated that Mr. Sandlin "appeared to be under the influence of illegal narcotics," that Ms. Mondragon was or recently had been present at Mr. Sandlin's residence, that Mr. Sandlin had "numerous scratches all over his back that had fresh blood on them" as well as a "large spot of blood about the size of a quarter on his left temple," and that Ms. Mondragon's purse was still in the house. *Id.* at 46–47. Mr. Sandlin was arrested, *id.* at 48, and his urine tested positive for methamphetamine and other drugs, *id.* at 43. Further, the Probation and Parole Division's Report of Violation (Probation) for this incident states, "During the investigation, [an officer] advised that Amber . . . was being treated at Nor-Lea hospital due

to being strangled and battered by Probationer Sandlin from an incident that occurred earlier in the day." *Id.* at 39.

On June 23, 2022, Judge Stone held a hearing on the petition to revoke probation. *Id.* at 56. He ruled that Mr. Sandlin had violated the terms of his probation. *Id.* He then held a sentencing hearing and sentenced Mr. Sandlin to nine years' incarceration followed by two years of parole, with credit for the days he already had served. *Id.* at 56–57. Judge Stone's order was filed on July 6, 2022. *Id.* at 56.

On July 7, 2022, Mr. Sandlin appealed, "challenging both the sufficiency of the evidence to establish a willful violation of the terms and conditions of his probation . . . and the district court's failure to specify the basis for the revocation in its written order." Doc. 1 at 17; Doc. 8-1 at 61. On April 4, 2023, the New Mexico Court of Appeals affirmed Judge Stone's decision. Doc. 8-1 at 90–91. The New Mexico Supreme Court denied Mr. Sandlin's subsequent petition for writ of certiorari on April 18, 2023. *Id.* at 111. Mr. Sandlin timely placed his Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody in the prison mailing system on February 14, 2024. Doc. 1 at 52.

**LEGAL STANDARD**

Section 2254(a) of title 28, United States Code, allows a person in state custody to challenge the constitutionality of their sentence. Section 2254(d) states,

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The standard is "difficult to meet" and "highly deferential" to the state court's decisions. *Cullen v. Pinholster*, 563 U.S. 170, 191 (2011).

Pursuant to § 2254(d)(1), a decision is contrary to clearly established federal law when it is "opposite to" the Supreme Court's decision on a question of law or different from the Supreme Court's decision "on a set of materially indistinguishable facts." *Owens v. Trammell*, 792 F.3d 1234, 1242 (10th Cir. 2015). This decision is not simply "contrary to a lower federal court's conception of how the rule should be applied"; rather, it must be "diametrically different and mutually opposed" to the Supreme Court's holding. *Id.* (internal quotation marks omitted).

With regard to § 2254(d)(2), even an incorrect state decision may not be objectively unreasonable: the question is not whether this Court would have made a different decision if it were in the state court's position, but rather whether "all reasonable minds reviewing the record" would agree that the state court was wrong. *Smith v. Aldridge*, 904 F.3d 874, 880 (10th Cir. 2018) (internal quotation marks and brackets omitted). When the relevant state court decision (e.g., a state supreme court decision) does not explain its reasoning, such as when an appellate decision simply states "affirmed" or "denied," "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018).

**DISCUSSION**

Mr. Sandlin bases his petition on the following grounds. First, he challenges the sufficiency of the evidence for the revocation of his parole, specifically a lack of evidence to establish willful violation of parole terms. Doc. 1 at 5. Second, he challenges the basis for the disposition: he argues that "there is/was no proof he had constructive knowledge" that he was not permitted to associate with Ms. Mondragon, that "[t]he state failed to provide written findings of

Mr. Sandlin's urine sample that tested positive for any 'drug(s),'" and that he did not receive a written order from the district court "specifying the facts it relied upon to revoke his probation." *Id.* at 7.

Mr. Sandlin appealed his case to the New Mexico Supreme Court, but his petition for writ of certiorari was denied. Doc. 8-1 at 111. Therefore, the decision of the New Mexico Court of Appeals ("NMCA") stands. I will address the NMCA's holdings with regard to each of Mr. Sandlin's arguments below.

## I. Sufficiency of Evidence

"A sufficiency-of-the-evidence challenge in a habeas petition presents a mixed question of fact and law" such that the Court should "apply both 28 U.S.C. § 2254(d)(1) and (d)(2) when reviewing sufficiency of the evidence on habeas." *Hooks v. Workman*, 689 F.3d 1148, 1165 (10th Cir. 2012). The Court therefore must look to both subsections.

The NMCA most thoroughly discussed the violation pertaining to associating with Ms. Mondragon. Sufficient evidence of only one violation is necessary to support a court's order to revoke probation, *see State v. Leon*, 2013-NMCA-011, ¶ 37, 292 P.3d 493, 506, and the NMCA stated that it was "not strictly necessary" to address the evidence of Mr. Sandlin's positive drug test. Doc. 1 at 20. Because I recommend that the Court conclude that the evidence of the violation pertaining to associating with Ms. Mondragon is sufficient, and because the NMCA did not consider the drug test evidence necessary to its disposition, I do not address the drug test in this section.

In analyzing the violation relating to Ms. Mondragon, the NMCA stated that "the standard terms and conditions [of probation] supplied notice that Defendant was prohibited from associating with individuals identified by his probation officer as being detrimental to his

supervision." Doc. 1 at 19. Additionally, "Defendant's probation officer testified that she had specifically and repeatedly told him not to have any association with Ms. Mondragon." *Id.* The NMCA held that these pieces of evidence together "establish[ed] that Defendant was on notice, and that he willfully violated the terms and conditions of his probation by associating with Ms. Mondragon." *Id.* at 19–20.

I recommend that the Court find this evidence to be sufficient under both § 2254(d)(1) and (d)(2). Under § 2254(d)(1), the NMCA's disposition of the case is not contrary to clearly established federal law in the form of a Supreme Court opinion. Clearly established Supreme Court law holds that "sufficient evidence" is necessary to revoke a defendant's probation, that is, a revocation may not be "totally devoid of evidentiary support." *Scott v. Province*, No. CIV-10-178-D, 2010 WL 2610665, at *2–3 (W.D. Okla. May 14, 2010) (citing *Black v. Romano*, 471 U.S. 606, 615–16 (1985) and *Douglas v. Buder*, 412 U.S. 430, 432 (1973)). The NMCA considered whether the evidence before the state district court supported a finding that Mr. Sandlin violated the terms and conditions of his parole, and it found that the testimony from the investigating officer, Ms. Mondragon herself, and the probation officer "amply support[ed]" the district court's conclusions. Doc. 1 at 18. Thus, the NMCA found that evidence existed (that is, that the record was not devoid of evidentiary support) and that the evidence was ample (a synonym for sufficient). These holdings align with the standards issued by the Supreme Court and therefore satisfy § 2254(d)(1).

As for § 2254(d)(2), I recommend that the Court find that the NMCA's determination of facts was reasonable in light of the evidence. New Mexico law considers willfulness in the context of the probationer's control: a violation is not willful if "it resulted from factors beyond a probationer's control." *State v. Vasquez*, No. A-1-CA-41981, 2024 WL 5135926, at *1 (N.M. Ct.

App. Dec. 17, 2024). A district court may "find that a defendant willfully violated their probation where such defendant failed to prove that the violation resulted from factors beyond his control." *Id.* at *2. The NMCA made such a finding here by determining that Mr. Sandlin's standard probation terms informed him that he was not permitted to associate with individuals his probation officer identified as being detrimental to his supervision, that his probation officer repeatedly told Mr. Sandlin that he was not to associate with Ms. Mondragon, and that Mr. Sandlin chose to associate with Ms. Mondragon nonetheless. *See* Doc. 1 at 19–20. The probation officer's sworn testimony about what she told Mr. Sandlin is evidence. *Evidence*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defined as "[s]omething (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact"). Further, the probation officer telling Mr. Sandlin not to associate with Ms. Mondragon was sufficient, legally, to create a binding condition: the exact details of the probation office's requirements need not be spelled out in the written order for them to have legal effect. *See Leon*, 2013-NMCA-011, ¶ 26, 292 P.3d at 503 (district court probation order incorporating "any other reasonable condition specified by the Probation and Parole Division" was sufficient to support validity of probation office's decision to place defendant on sex offender supervision conditions). The state court factual record establishes reasonable certainty, the standard applicable to probation revocation proceedings, that Mr. Sandlin willfully violated his conditions of probation. *See State v. Williams*, 2021-NMCA-021, ¶ 6, 489 P.3d 949, 952 (2021). Said another way, the NMCA engaged in a reasonable determination of the facts based on the evidence presented.

## II. Basis for the Disposition

Mr. Sandlin also challenges the basis for the disposition. He contends that he did not receive due process because 1) there was no proof he had constructive knowledge that he was not

permitted to associate with Ms. Mondragon, 2) the state did not provide written findings of his positive drug test, and 3) the district court was insufficiently specific in the order revoking his probation. Doc. 1 at 7, 25.

The Supreme Court has held that due process requires certain procedures to occur during probation revocation proceedings. "[T]he final revocation of probation must be preceded by a hearing." *Black v. Romano*, 471 U.S. 606, 611 (1985). The probationer is entitled to "written notice of the claimed violations of his probation; disclosure of the evidence against him; an opportunity to be heard in person and to present witnesses and documentary evidence; a neutral hearing body; and a written statement by the factfinder as to the evidence relied on and the reasons for revoking probation." *Id.* at 612. Depending on the circumstances, the probationer also may be entitled to cross-examine adverse witnesses and receive the assistance of counsel. *Id.*

The issues of evidence regarding Mr. Sandlin's knowledge that he was not permitted to associate with Ms. Mondragon and Mr. Sandlin's urinalysis results are just that: issues of evidence, not issues of due process. The NMCA did not discuss them in the context of the basis for the disposition, *see* Doc. 1 at 21–22, and as discussed above, the evidence was sufficient for the state court to find (and for the NMCA to affirm) that Mr. Sandlin had violated the conditions of his probation. I therefore turn to Mr. Sandlin's third challenge to the basis for the disposition: that the district court's order revoking his probation did not contain written findings describing the specific basis for its conclusion.

The NMCA stated,

> The district court made the basis for the disposition clear at the conclusion of the hearing on the merits, when the judge stated his findings that Defendant had violated standard condition number four, requiring him to refrain from associating with persons identified by his probation officer as being detrimental to his supervision, and that Defendant had violated standard condition number nine, prohibiting him from consuming any type of controlled substance.

*Id.* at 22. The NMCA concluded that pursuant to New Mexico case law, due process is satisfied "where oral statements described the reasoning behind the court's decision to revoke probation," even in "the absence of written findings." *Id.* at 23 (citing *State v. Tony G.*, 1995-NMCA-141, ¶ 20, 121 N.M. 186, 190, 909 P.2d 746, 750).

I recommend that the Court find that the NMCA's decision is in line with clearly established Supreme Court law. As discussed above, the Supreme Court requires a written statement by the factfinder. But, interpreting this requirement, the Tenth Circuit has held that "written findings are constitutionally required only if the transcript and record before the judge do not enable a reviewing court to determine the basis of the judge's decision to revoke probation." *Morishita v. Morris*, 702 F.2d 207, 210 (10th Cir. 1983). Here, the NMCA concluded that the state district judge established a clear oral record including the evidence he relied on and his reasons for revoking probation. Doc. 1 at 22–23. It found that because of the clear statements by the state district judge, due process was not violated notwithstanding the lack of written findings. *Id.* The law that the NMCA applied therefore aligned with the law as articulated by the Supreme Court and clarified by the Tenth Circuit.

I also recommend that the Court find that the NMCA's decision was based on a reasonable determination of the facts in light of the evidence presented to the state district court. The state district judge stated that Mr. Sandlin's probation officer had told Mr. Sandlin "a couple of times, three times, not to have any association with Ms. Mondragon," and that Mr. Sandlin had "violated standard condition number four, that he was to refrain from associating with the person identified by his probation officer and parole officer as being detrimental to his supervision, Ms. Mondragon." Doc. 8-1 at 81. These statements on the record indicate that the state district judge relied on Mr. Sandlin's probation officer's testimony in determining that Mr.

Sandlin had violated standard condition number four, which prohibited him from associating with individuals identified by his probation officer as being detrimental to his supervision. Pursuant to *Morishita*, an oral record of this information is sufficient to satisfy due process: it identified which condition was violated and what evidence supported the judge's finding. *See also Black*, 471 U.S. at 611 (requiring "written statement by the factfinder as to the evidence relied on and the reasons for revoking probation").

Accordingly, I recommend that the Court deny Mr. Sandlin's petition as it pertains to the basis for the disposition.

**CONCLUSION**

For the above reasons, I recommend that the Court deny Mr. Sandlin's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1).

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific. *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court. *Id.* In other words, if no objections are filed, no appellate review will be allowed.**

LAURA FASHING
UNITED STATES MAGISTRATE JUDGE